109 A.2d 824 (1954)
Mary T. GARBARINO, Guido M. Garbarino, Renata C. Treves, Gino R. Treves, Leo J. Wollemborg, George R. Miller, Lee E. Miller and Olimpia Falco, Plaintiffs,
v.
ALBERCAN OIL CORPORATION, Canada Southern Oils, Ltd., and The Catawba Corporation, Defendants.
Court of Chancery of Delaware, New Castle.
November 12, 1954.
On Reargument December 21, 1954.
*825 Robert C. Barab, Wilmington, and Gallup, Climenko & Gould, New York City, for plaintiffs.
Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, for defendant Albercan Oil Corp.
John J. Morris, Jr., of Morris, James, Hitchens & Williams, Wilmington, for defendant Canada Southern Oils, Ltd.
SEITZ, Chancellor.
This is the decision on the objections of the defendants, Albercan Oil Corporation (called "Albercan") and Canada Southern Oils, Ltd. (called "Canada Southern") to plaintiffs' interrogatories. Defendants object to all the interrogatories for one or more reasons.
This is an action by certain Albercan stockholders attacking a sale of assets on the ground that the consideration paid by Canada Southern to Albercan for its assets was legally inadequate. Canada Southern owns a majority of the Albercan stock. Under the agreement of sale, Albercan was to sell its assets to Canada Southern and in turn Canada Southern agreed to deliver to or upon the order of Albercan sufficient shares of Canada Southern stock to provide each shareholder of Albercan one share of Canada Southern for every 2.444 shares of Albercan held. In order to have the sale "go through" without injunctive interference, the parties stipulated, inter alia, as follows:
"4. The chancellor will proceed to determine whether the consideration fixed in the contract of sale between Albercan and Canada Southern, dated March 27, 1953, was so inadequate as to be invalid. For the purposes of such determination, it is agreed that the value of the stock of Canada Southern on March 27, 1953, was $11.50 per share."
Defendants first object to certain interrogatories on the ground that they seek information for periods not relevant to the date to be used in judging the fairness of the sale. Obviously, the assets must be valued and compared as of a particular date. The parties are in disagreement as to the date the court should use in evaluating Albercan's assets. Defendants insist that the date is March 27, 1953, while plaintiffs contend that the date is either November 25, 1953, or February 23, 1954. The reason for the division of opinion is that the original agreement of sale was dated March 27, 1953. However on November 25, 1953, *826 an extension agreement was executed by which the closing date was further extended from earlier extension dates granted the selling corporation. The sale was consummated on February 23, 1954.
Initially, I see no reasonable basis for using February 23, 1954, the consummation date, for purposes of comparing values. There is no suggestion that it was unreasonably chosen or chosen in bad faith. As subsequently appears, it was selected soon after the tax free nature of the sale was established.
Plaintiffs next argue very vigorously that the November 25, 1953 date should be used for purpose of testing the fairness of the sale price, rather than the date of the original agreement. They point to the admitted control of the selling corporation by the purchasing corporation and say such fact rendered it necessary for Albercan's directors to re-examine the fairness of the transaction before approving the extension on November 25, 1953. This being so, they contend that the later date must be used for comparison purposes.
Defendants say that the extensions were solely for the benefit of the selling corporation in the sense that the contracting parties were waiting to see whether they could obtain a ruling that Albercan would be making a tax free sale.[1] Defendant, Canada Southern, of course, necessarily concedes that this benefit to plaintiffs would largely inure to its benefit because it is the largest stockholder of the selling corporation. However, the reason for the extension was also beneficial to Albercan's other stockholders. Indeed, a serious problem concerning the wisdom of the management's actions might have been involved had they closed the sale without assurances as to its tax free nature.
Based on the purpose of the extension and the time lapse involved, I cannot agree, on the present record, that the November 25, 1953, date is the date to be used.
Defendants vigorously contend that the provisions of the stipulation govern and that those provisions call for a determination of value as of the original sale date, namely, March 27, 1953. They point to the fact that it was stipulated, "for the purposes of such determination, it is agreed that the value of the stock of Canada Southern on March 27, 1953, was $11.50 per share."
It would not be fair or reasonable to use the agreed March 27, 1953 value of Canada Southern stock and compare it with the value of the selling corporation's assets at some other date. I am therefore convinced that by the provisions of the stipulation the parties intended that the court should use the asset value of the selling corporation as of March 27, 1953, when making the value comparison.
Plaintiffs suggest that if the stipulation requires evaluation of Albercan's assets as of the original contract date, as I have found, then plaintiffs should be relieved from the effect of the stipulation because this is a derivative action and other stockholders should not be penalized by an improvident stipulation. It is my view that the date used in the stipulation was reasonable and indeed would have been the determinative date even in the absence of the stipulation. However, the Court reserves the right to reconsider the matter if it should appear that the subsequent conduct of the parties warrants a finding of bad faith or other inequitable conduct. For the present, the comparison date is March 27, 1953, and the relevancy or reasonableness of plaintiffs' interrogatories will be judged in accordance with that conclusion.
Defendants' relevancy objection is based on the foregoing disagreement as to the crucial date. However, when we adopt the March 27, 1953, date, as I have done, it still appears that the dates used by plaintiffs in their interrogatories are not so far removed from the sale date that they can be said to seek irrelevant information. *827 When this type of value determination is involved, it is unrealistic to shut out the light shed by evidence of value coming from reasonably proximate periods.
It therefore follows that the relevancy objection based on the critical date must be overruled even though I agree with defendants' argument as to the proper date.
Defendants say that, in any event, certain of these interrogatories are irrelevant because of the information sought. These interrogatories seek such information as itemized gross receipts and disbursements of Albercan from 1949 through February 1954, identification of appraisals and other documents showing the value of Albercan's assets, etc. I think it fair to say that such information is reasonably related in time to the crucial date and is pertinent to the issue. Defendants place too narrow an interpretation on evidence relevant to a determination of the value of the assets involved. The objections on this ground must fall for that reason.
Plaintiffs candidly admit that by certain interrogatories they seek information from which they hope to make out causes of action in Albercan's favor based on wrongful payments[2] and violation of the corporate opportunity doctrine. These requests are premised upon the contention that plaintiffs may obtain information which could form the basis for one or more causes of action. Plaintiffs say that causes of action belonging to Albercan are assets which should be valued because they passed to the purchaser by the sale of assets. Since they passed to the purchaser, it is certainly true that known causes of action must be considered in evaluating assets for purpose of determining the fairness of a sale of assets. Compare Schiff v. RKO Pictures Corp., Del.Ch.1954, 104 A.2d 267. But what about discovery seeking to find possible causes of action in a sale of assets case?
As to the interrogatories based upon the corporate opportunity theory, plaintiffs say that Canada Southern entered into a certain area on its own after extensive disbursements for exploration in the same area had been made by Albercan. Based on this fact and Canada Southern's control, plaintiffs say that they ought to be able to try to show that Canada Southern appropriated opportunities belonging to Albercan. As to the wrongful payment theory, plaintiffs say they have alleged certain wrongful payments in the complaint. Based on this fact, plaintiffs say they have made out a case sufficient to justify the granting of discovery to see if there are others.
Plaintiffs say they have made a showing sufficient to warrant the granting of discovery to try to establish actions under both theories. I cannot agree. While plaintiffs' argument has appeal, to grant their request on this showing would be to recognize that in every sale of assets case the corporations could be legally "dry cleaned" by the discovery procedure to see whether or not there might possibly be causes of action in its favor which should be evaluated. This would be so whether or not a question of "control" was involved. Where, as here, there is nothing in the record to date to show any substantial basis for believing that such causes may exist, I do not believe such inquiries are fairly within the discovery provisions of Chancery Court Rule 33, Del.C.Ann.
This is admittedly a "practical" decision. Where there is a legal attack on a sale of assets made under the statute, I do not believe it should follow that those attacking the sale are entitled to discovery to search for possible causes of action in the absence of a fairly substantial showing that they may possibly exist. No matter how desirable and attractive it may be to know whether the corporate affairs have been operated with fidelity and wisdom, the hard fact of life is that courts serve a limited function under our system. Plaintiffs' requests would be more properly processed by some administrative agency. Moreover, the desirability, if not necessity, that lawsuits *828 be tried and completed with reasonable expedition cannot be overlooked if our legal system is to serve rather than obstruct. To adopt plaintiffs' approach here would invite the extension of such litigation beyond reasonable limits, not to mention the possibilities of abuse.
But plaintiffs say their discovery in this field will not unduly prolong the trial of the case. Who knows? Discovery in this field breeds discovery and the pleasure of the pursuit may become as attractive as any other search beyond the rainbow. I believe the parties seeking such discovery should show a reasonable possibility of the existence of such assets before being permitted to have discovery in that field.
Finally, plaintiffs point out that this is a derivative action and that they are suing in the right of Albercan, which is the real plaintiff in the sense that it will receive any recovery. Consequently, they say they are entitled to any information possessed by Albercan. This presents another point of the greatest practical importance on which counsel have been unable to find any direct authority. In essence, plaintiffs claim that in this type of action the limitations surrounding the discovery procedures do not apply to the corporation for whose benefit the derivative action is brought. This argument has logical appeal but its recognition would in effect impose a "double standard" in the administration of the discovery rules without any justification therefor appearing in the rules. Obviously, a corporation so situated should be very careful not to take action which could be interpreted as an attempt to obstruct the stockholders from obtaining information reasonably calculated to aid the court in a determination on the merits of the issues presented. Yet, such a corporation is entitled to prevent even its stockholders from engaging in unrestricted discovery in search of "something". The adoption of plaintiffs' approach would constitute a standing invitation to abuse.
I conclude that when a corporation for whose benefit a derivative action is brought objects to requests for discovery, the Court must apply the same rules of discovery as govern other parties. However, it is obvious that the Court in ruling on requests for such discovery should consider the various legal relationships and the sweep of the discovery sought as well as the evidentiary showing then made.
Since Albercan has raised objections, it follows that they must be evaluated in accordance with the standards just stated. When so weighed, it appears to the Court that the present showing does not justify the breath of discovery sought by plaintiffs against Albercan.
For the reasons stated the objection to interrogatories seeking information concerning possible causes of action will be sustained. I desire to make it clear that I do not mean by this decision to preclude appropriate discovery proceedings where there appears to be an adequate basis therefor.
Defendants next object to all interrogatories on the ground that they are so broad as to include information concerning communications which are privileged and information which is the work product of defendants' attorneys in preparation for the trial of the case. This objection is without merit because plaintiffs do not seek such documents by this application. They merely seek identification. Nor does it appear that the information sought could only come from documents or communications in the categories embraced in defendants' objection. Defendants' objection will have more substance if and when plaintiffs seek production of the documents.
By certain interrogatories plaintiffs seek to obtain information concerning Canada Southern's assets other than Albercan stock. Plaintiffs admit that this information is to be used to show the value of the Albercan stock held by Canada Southern by subtracting the value of such assets from the total value of Canada Southern as revealed by the stipulated value of its stock. I do not think this is a proper way to evaluate Albercan's assets where the parties have stipulated to the per share value of Canada Southern stock solely for *829 comparison purposes. The objection to these interrogatories will be sustained.
It seems to me that interrogatories 14, 15 and 17 are proper, since they deal with matters which may well arise at the trial.
Defendants' objections as to the uncertainty and indefiniteness of certain interrogatories is without merit when considered with the constructions placed upon them by plaintiffs in their brief. If it will remove any doubt, the construction may be incorporated in the order.
Defendants object to certain interrogatories on the ground that they are burdensome. They make no specific showing that to answer the interrogatories which I have here ruled must be answered would impose an unreasonable burden. This objection is therefore without merit. It may however be reviewed as to the request for gross receipts and disbursements of Albercan if an appropriate showing of hardship can be made.
Order on notice.

On Reargument
In this Court's opinion filed November 12, 1954, it was held, among other things, that plaintiffs were not entitled to certain discovery seeking evidence of possible causes of action based on the corporate opportunity theory. The Court felt that there was nothing in the record at that time to show any substantial basis for believing that corporate opportunity causes of action might exist in favor of the corporation of which plaintiffs were stockholders. Subsequently plaintiffs were granted leave to reargue that portion of the opinion and this is the decision thereon.
Initially, it will be recalled that this is a derivative action by Albercan stockholders attacking the fairness of a sale of assets to Canada Southern. Plaintiffs by their discovery seek to show possible causes of action existing against Canada Southern in Albercan's favor. If such there are, then admittedly they should be evaluated in determining the fairness of the sale price. I pass by the obvious point that if they exist they apparently were not considered by the directors in fixing the sale price.
The record facts and reasonable inferences therefrom may be stated briefly. The purchasing corporation (Canada Southern), which was incorporated May 23, 1951, owned 90% of Albercan's voting stock. I think it is reasonable at this stage to infer that because of Canada Southern's stock control, Albercan's board reflected policies not contrary to Canada Southern's interests. Albercan bought or leased extensive acreage in Alberta, Canada commencing in July 1950. It drilled exploratory wells at substantial expense at a time when it was borrowing heavily. During August 1951, it made discoveries which resulted in oil and gas reserves of value. Up to about that time, Canada Southern had not owned any gas or oil properties (having been a holding company). But in October 1951, Canada Southern acquired for itself properties of the same general type and, while not clear, apparently in the same general areas as Albercan's. These acquisitions continued until at least March 1953.
The question is whether in the light of this record plaintiffs are entitled to the discovery sought. Plaintiffs frankly concede that under the test set forth by the Court in its previous opinion, they are not entitled to an answer to interrogatory No. 11.
I proceed to see whether they are entitled to have interrogatory No. 9 answered. It reads:
"9. List the holdings of Canada Southern Oils, Ltd. as of March 27, 1953 and February, 1954 in non-producing and producing oil and/or gas properties, including (but not limited to) all interests under option or in any way subject to acquisition by Canada Southern Oils, Ltd. on each said dates. As to each property, state the following:
"A. Description of the property or interest.
"B. Date of acquisition or of the right of acquisition.

*830 "C. Overriding interest therein, if any.
"D. Consideration paid or undertaken and date of payment or undertaking thereof or consideration to be paid or undertaken, if not acquired by February, 1954.
"E. Status of exploration and development as of February, 1954 including, but not limited to, number and location of wells and production of each.
"F. Date, general description, present whereabouts and custodian of all geologists' and engineers' reports, correspondence memoranda, Directors' Minutes and any other documents showing or tending to show the value of said holdings and the prospects of future development and reserves of oil and/or gas or other elements of valuation thereof.
"G. Date, general description, present whereabouts and custodian of all agreements, correspondence, memoranda and Directors' Minutes relating to negotiations for and acquisition of said holdings.
"H. Date, general description, present whereabouts and custodian of all maps, drawings, charts, graphs or diagrams showing the location of said properties and interests and/or supplying any information with respect thereto."
Upon reconsideration it appears to the Court that the record supports the right to discovery of the general type set forth in the quoted interrogatory and the previous ruling will be modified accordingly. The following "facts" lead me to this conclusion:
1. Canada Southern's "control" of Albercan's board through its dominant stock position.
2. Albercan's "discovery" of oil and gas and Canada Southern's entry into what I infer is the same general field shortly thereafter.
3. The nearness of the sale of assets to the possible diversion of the alleged corporate opportunities and their "loss" if not now discovered.
However, I feel the interrogatories should be limited to the properties in what might be called the same general fields as those explored by Albercan. If this poses a problem I will hear counsel concerning it. The answers will also include holdings as of February, 1954, but this is not to be construed as affecting my previous ruling as to the crucial date for determining the fairness of the sale.
Interrogatory No. 12 must also be answered to the extent that it applies to interrogatory No. 9.
Order on notice.
NOTES
[1] Plaintiffs say this fact is not in the present record but they do not appear to contest it. However, defendants will be granted leave to serve and file an affidavit on this point. The sole purpose will be to aid the court in the decision on these objections to interrogatories.
[2] To the extent, if at all, that the interrogatories deal with the payments actually attacked in the complaint they will be allowed.